UNITED STATES BANKRUPTCY COURT
EASTERN OF NEW YORK
_____

*In re*:

Loretta Poliseno-Fischer                                   Chapter 13
                                                                     Case No. Case No.  1-18-43429

            Debtor.

_____

### REPLY AFFIRMATION IN RESPONSE TO THE DEBTOR'S MEMORANDUM OF LAW

      Lisa Milas, an attorney admitted to practice law, in the courts of the State of New York and in this Court, hereby affirms the following to be true under penalty of perjury.

1.      I am a partner with Schiller, Knapp, Lefkowitz & Hertzel, LLP attorneys for AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee  by its servicing agent Gregory Funding, LLC (hereinafter the "Creditor"), a secured creditor of the above-named Debtor. I am fully familiar with the facts of this case and submit this affirmation in support of the pending application by the Creditor that the post-petition payments currently held by the Chapter 13 Trustee during the loss mitigation process be turned over to the Creditor.

### PROCEDURAL HISTORY

2.      The Court adjourned the September 24, 2019 hearings to October 28, 2019 to allow counsel for the debtor to submit a Memorandum of Law and counsel for the Creditor to submit a Response on the issue of the trustee funds.

3.      It was agreed at the September 24, 2019 hearing that the Debtor shall

submit a Memorandum of Law on or before October 8, 2019 and that the Creditor shall submit its Response on or before October 22, 2019. A letter confirming the briefing schedule was docketed on October 2, 2019.  (**See** Docket Entry 46).

4. On October 22, 2019 counsel for Creditor filed its Memorandum of Law in accordance with the agreed upon briefing schedule.

5. On October 21, 2019, the Trustee's Motion to Dismiss was adjourned to November 4, 2019.

6. On <u>October 25, 2019</u>, the Debtor filed a Memorandum of Law, well after the deadline and just one business day prior to the hearing apparently haven taken for granted the case would be dismissed on October 21, 2019 and funds returned to the Debtor.

7. In light of the foregoing, it respectfully requested this Court consider the within Reply Affirmation.

**ARGUMENT**

8. The Debtor's argument regarding "good faith payments" is misplaced. For the reasons fully set forth in the GF's Memorandum of Law the funds held by the trustee are clearly post-petition payments. If they were "good faith payments" as a mirage place holder, just to go back to debtor, why make the Debtor pay anything at all?

9. The Debtor is seeking to capitalize on the purported increase in value of the property.  However, the claimed increase in value is not dispositive.  The funds at

issue are being held by the Trustee represent post-petition payments not Chapter 13 Plan payments. The payments cannot be characterized in a manner that makes them other than what they are—post-petition payments.

10. Moreover, the valuation currently be claimed by the Debtor is at odds with the valuation she provided to this Court at the time of filing.

11. On or about June 13, 2018, the Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code in this Court. Schedule "A" of the petition valued the subject property at **$510,000.00**. A copy of Schedule A is annexed hereto as Exhibit "A".

12. On October 25, 2019 Debtor's Counsel filed Memorandum of Law stating, "On May 14, 2019, Debtor obtained an appraisal of the Property. *See Exhibit B.* The appraisal shows that on the date this petition was filed of the property was **$777,000.00**." (emphasis added).

13. The Debtor's lack of candor belies her claim of good faith. "The integrity and effectiveness of the bankruptcy process is founded upon the premise that debtors file complete and accurate schedules, upon which the Court, trustees and creditors can rely." In re Edwards, No. 03-10018, 2003 WL 22016324, at *8 (Bankr. D. Vt. Aug. 26, 2002); see also Fed. R. Bankr. P. 1008. "All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."

14. The loan remains contractually due for the **August 1, 2010 payment.** The Creditor advises as of October 25, 2019 the current payoff stands at $671,884.92

including an escrow advance now totaling $63,876.52.

15.     Despite failing to pay the mortgage in over nine years, the debtor's "appraisal" shows substantial upgrades to the property including – "new kitchens-Bath-finished Basement, New Roof – Deck". Luxuries enjoyed by the Debtor while the creditor received nothing. The Debtor's conduct demonstrates a sense of entitlement not obligation.

16.     Notwithstanding the gargantuan mortgage arrears and nine year default on the Creditor cooperated in good faith with the Debtor's request for loss mitigation by filing its Loss Mitigation Contact Designation and Financial Package on July 2, 2018. The Debtor failed to provide **any** documentation forcing the Creditor to file motion to terminate loss mitigation. The Creditor's September 18, 2019 motion terminate loss mitigation resulted in the Court directing the Debtor to submit complete package by October 5, 2018 (Docket Entry October 1, 2018). It is inequitable permit the debtor to benefit from the delaying loss mitigation process and then deprive the Creditor of payment.

17.     The Debtor cannot claim the Creditor's acted unreasonably in its loss mitigation proposal after a nine year default in payments and pre-petition mortgage arrears in the amount of 300,777.87.

18.     The Debtor's argues that … "upon termination of the program or dismissal of the case the Trustee has routinely reimbursed the balance of the funds paid directly to the Debtor" (Point 11, paragraph 2).

19. It's not a matter of routine but statute which provides authority to return funds to the Debtor upon dismissal. <u>See</u> Section 1326(a). Contrary to the facts sets forth in the Debtor's Memorandum of Law, upon information and belief, the Chapter 13 Trustee doesn't routinely turn over funds to the Debtor upon termination of loss mitigation absent a dismissal.

20. Section 1326(a)(2), provides the authority for the distribution of payments retained by the trustee as it states:

> A payment made under paragraph (1)(A) shall be shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

21. However, 1326(a)(2) is not applicable in the instant case as confirmation has not been denied and the case has not been dismissed. Moreover, termination of loss mitigation is not basis under 1326(a)(2) for the trustee's funds to be turned over to the Debtor. The Debtor provides absolutely no statutory authority for the trustee to turn over the funds to the Debtor upon termination of loss mitigation.

Dated:  October 25, 2019  **SCHILLER & KNAPP LEFKOWITZ & HERTZEL LLP**

By:  s/Lisa Milas_____
Lisa Milas, Esq.
Attorneys for AJX Mortgage Trust I, a Delaware Trust, Wilmington Savings Fund Society, FSB, Trustee, by its servicing agent Gregory Funding, LLC
950 New Loudon Road
Latham, New York 12110
(518) 786-9069